City of Columbus, Plaintiff-Respondent,
v.
Donald L. Johnson, Defendant-Appellant.
No. 04-0087-FT.
Court of Appeals of Wisconsin.
Opinion Filed April 29, 2004.
¶1 VERGERONT, J.[1]
Donald Johnson appeals a judgment of conviction for operating a motor vehicle with a prohibited blood alcohol content of.158 in violation of an ordinance adopting WIS. STAT. § 346.63(1)(b). The issue on appeal is whether the officer had the requisite reasonable suspicion for an investigatory stop. We conclude the officer did, and we therefore affirm.

BACKGROUND
¶2 Johnson was stopped on March 20, 2003, at approximately 2:00 a.m. by Andrew Krumholz, an officer with the City of Columbus. Johnson challenged the legality of the stop, contending that the officer did not have reasonable suspicion for the stop.
¶3 At the hearing on the motion, the officer testified as follows. He was on duty in a marked squad car in the City of Columbus, traveling north on Highway 89, when he observed one vehicle in the parking lot of Cardinal Country Day Care. When he initially saw the vehicle, it appeared that the headlights were off and the vehicle was stationary, near the building. The officer also observed the van that the day care center uses to transport children parked in its normal place alongside the building and he did not see any lights on in the building or anything like cleaning services going on. The officer had been past the day care center numerous times and did not recall seeing that vehicle there and did not recognize the vehicle. The officer and others in the department had been instructed to start checking businesses because there had been burglaries.
¶4 The vehicle left the parking lot and turned onto Highway 89 so that it was traveling south, and it passed the squad car. The officer saw that the vehicle had its headlights on then, but did not see who was in the vehicle and did not recognize the vehicle. The officer continued driving north, watching the vehicle in his rear-view mirror. Normally, although not always, businesses in town let the police department know when someone was going to be there after hours and what they were going to be doing, and the officer could not recall that the department had received such a call from Cardinal Day Care. As the officer made a U-turn to catch up to the vehicle, he called dispatch and asked if the department knew of anything scheduled at the day care center or if the day care center cared for children in the middle of the night, which he knew some bigger day care centers did. Dispatch answered that the business was closed at this time of the night and there was nothing going on that it was aware of. The officer learned this information just as he was catching up to the vehicle. He gave the license plate of the vehicle to dispatch and made the traffic stop. The officer had not observed the vehicle violate any traffic laws.
¶5 As the officer was getting out of the squad car, he was advised by dispatch that the vehicle was registered to Porth Chevrolet. The officer went up to the vehicle, and, as soon as the driver rolled down the window, the officer recognized him as Johnson, whom the officer knew worked at Porth Chevrolet.
¶6 Johnson testified that he was the owner of Cardinal Day Care, had been for nine years, and, because he had a full-time job during the day, he was sometimes there at night for various reasonsnot on a consistent basis, but on an as-needed basis. On March 20, 2003, he was there doing paperwork and left about 2:00 a.m.[2]
¶7 The trial court concluded that the circumstances observed by and known to the officer were sufficient to provide a reasonable basis for suspecting that the driver and vehicle were involved in illegal activity on the day care center premises. Accordingly, the court concluded that the stop of the vehicle to investigate was constitutionally permissible.

DISCUSSION
¶8 On appeal, Johnson renews his argument that the officer violated his Fourth Amendment right against unreasonable seizures by stopping him.
¶9 In order to justify an investigatory seizure under the Fourth Amendment, the police must "have a reasonable suspicion, grounded in specific articulable facts and reasonable inferences from those facts, that an individual is [or was] violating the law." State v. Colstad, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394. The question of what constitutes reasonable suspicion is a common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience. Id., ¶8. Reasonableness is measured against an objective standard taking into consideration the totality of the circumstances. State v. Richardson, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990).
¶10 A trial court's determination of whether undisputed facts establish a reasonable suspicion justifying police to perform an investigative stop presents a question of law, subject to de novo review. Colstad, 260 Wis. 2d 406, ¶8.
¶11 We agree with the trial court that, based on all the circumstances observed by and known to the officer, there was reasonable suspicion to believe that the driver and vehicle in the parking lot were engaged in, had been engaged in, or might be about to engage in criminal activity. It was reasonable to infer from the officer's knowledge of the type of business that it was not one that typically had people there at that hour of the night, and, after checking with dispatch, the officer had a firmer basis for reasonably believing that the vehicle he observed was not legitimately connected with the business. The fact that the officer was familiar with the business's van, but not with this vehicle, and had not seen this vehicle there before adds to the reasonableness of the inference that the vehicle was not legitimately connected with the business. Also, in this case the officer had been instructed to check businesses because there had been burglaries; that directive adds to the reasonableness of the officer's suspicion that the vehicle might be connected with a burglary.
¶12 Granted, these are not the only reasonable inferences, as Johnson argues. However, an officer is not required to rule out innocent explanations, and he may draw those reasonable inferences that are consistent with guilt and temporarily freeze the situation in order to investigate further. State v. Jackson, 147 Wis. 2d 824, 835, 434 N.W.2d 386 (1989). The fact that the officer later learned that Johnson owned the business does not mean the stop was unlawful; we judge the circumstances at the time of the stop. State v. Guzy, 139 Wis. 2d 663, 679, 407 N.W.2d 548 (1987).
¶13 Johnson emphasizes this officer's negative answer to the question on cross-examination whether he saw Johnson commit or about to commit any crime. However, that question is not based on the proper legal standard. The officer need not see such conduct; rather, the proper test is whether, based on what the officer saw and knew, there was a reasonable suspicion that the driver of the vehicle had been, was, or was about to be involved in criminal activity. Colstad, 260 Wis. 2d 406, ¶8.
¶14 Johnson also emphasizes that the officer answered "correct" on cross-examination to the question, "So you were acting on a hunch that there may have been a problem, correct?" The Supreme Court in Terry v. Ohio, 392 U.S. 1, 27 (1968), stated that an "inchoate and unparticularized suspicion or `hunch'" will not suffice to justify an investigative stop. However, because we use an objective standard in deciding whether there was reasonable suspicion, whether a testifying officer agrees with cross-examining counsel's word choice of "hunch" is not relevant to the analysis.
¶15 Because the trial court correctly concluded that the stop was lawful, we affirm the judgment of conviction.
By the Court.  Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted. This is an expedited appeal under WIS. STAT. RULE 809.17.
[2] Johnson also gave some testimony that arguably conflicted with the officer's testimony that it appeared the vehicle's headlights were off when the officer saw the vehicle in the parking lot. The trial court did not make a finding on whether the vehicle's headlights were on or off at that time; accordingly, we do not consider this in our analysis.