COURT OF APPEALS
DECISION
DATED AND FILED

September 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP993-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF1407

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JEFFREY R. PALMER,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Rock County: JOHN M. WOOD, Judge. *Affirmed*.

Before Blanchard, Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jeffrey R. Palmer appeals a judgment of conviction entered on his guilty plea to one count of operating a motor vehicle while intoxicated (OWI) as a fourth offense.  Palmer argues that the circuit court erred in denying his motion to suppress because police (1) lacked reasonable suspicion to justify a traffic stop and (2) unlawfully extended the traffic stop to investigate whether he was driving while intoxicated.  We reject Palmer's arguments and affirm.

## BACKGROUND

¶2     Palmer's ex-wife, S.P., called police to report that Palmer had just shown up at her apartment building, unwelcome and intoxicated.  She described his vehicle, and officers performed a traffic stop.  Palmer was unsteady on his feet and smelled of alcohol.  Based on the results of the field sobriety tests and a preliminary breath test, Palmer was arrested.  He was charged with OWI and operating with a prohibited alcohol concentration, both as a fourth offense.  He moved to suppress evidence of his intoxication, including the results of his blood-alcohol test.

¶3     The following facts are taken from the evidentiary hearing on Palmer's suppression motion.  Officer Nathan Sharp testified that he was on patrol when he was dispatched to S.P.'s address.  Upon arrival, S.P. told Sharp that she was sitting on her couch in her apartment when she heard someone knocking at her door.  S.P. could hear her ex-husband, Palmer, asking her to come to the door.  S.P. refused to answer the door because their relationship ended on bad terms, but Palmer continued to knock.

¶4     When Palmer finally left S.P.'s door, S.P. looked outside and could see Palmer's truck.  S.P. also saw Palmer outside.  He "appeared to be intoxicated" and was "stumbling around."  S.P. stated that she was familiar with Palmer's body posture when he was intoxicated, and that on this occasion he was stumbling as he

2

did when he was intoxicated. S.P. called police and asked them to warn Palmer against trespassing at her residence. S.P. also provided police with a description of Palmer's vehicle.

¶5 Officer Sharp testified that Sergeant Holford stopped Palmer's vehicle. When asked why Palmer was stopped, Sharp answered "[t]o make contact with [Palmer] to be warned for trespassing at the residence," and because " [S.P.] had informed us prior to arriving that [Palmer] was intoxicated."

¶6 Officer Natalie McDonald testified that she watched Sergeant Holford stop Palmer's vehicle. McDonald confirmed that the reason for the traffic stop was twofold; police were investigating the incident between Palmer and his ex-wife and they were aware that S.P. indicated that Palmer was intoxicated.

¶7 Officer McDonald approached Palmer's vehicle from the passenger side while Sergeant Holford approached the driver's side. Holford asked Palmer to step out of his vehicle to address S.P.'s report that Palmer was intoxicated.

¶8 Officer McDonald described Palmer's balance as "unsteady" when he exited his vehicle, and she observed that and she saw Palmer had difficulty walking the short distance around his truck and stepping up on a curb. While speaking with Palmer, McDonald could smell intoxicants on his breath. Palmer also admitted to drinking, saying that he had consumed one beer. Officers decided to administer field sobriety tests based on the information S.P. provided and their observations of Palmer during the traffic stop.

¶9 The circuit court denied Palmer's suppression motion. The court explicitly found both testifying officers to be credible. Emphasizing S.P.'s familiarity with Palmer, the court gave weight to S.P.'s opinion that he was

intoxicated. The court concluded that the initial traffic stop was lawful, stating that the information provided by S.P. "certainly would give rise to the officer's concern that someone who is driving a motor vehicle may be intoxicated."

¶10 Concerning the traffic stop extension, the circuit court found that police's immediate awareness of Palmer's unsteady balance and his odor of intoxicants tended to "confirm[] the representations from [S.P.] to Officer Sharp." The court concluded that "the officers had reasonable suspicion to take each of the next steps that they took before they undertook the proper steps to conduct field sobriety tests." Palmer appeals the denial of his suppression motion.[1]

## DISCUSSION

¶11 Palmer first challenges the constitutionality of the initial traffic stop. An officer may lawfully perform a traffic stop when, based on specific and articulable facts, he or she reasonably suspects that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 22, 30 (1968). Reasonable suspicion is a common sense test and presents a lower burden than the probable cause necessary to justify an arrest or search warrant. *State v. Waldner*, 206 Wis. 2d 51, 56, 59, 556 N.W.2d 681 (1996). This approach strikes a balance between individual privacy and the public's interest in effective crime detection and prevention. *Id.*

¶12 "In reviewing a motion to suppress, we apply a two-step standard of review." *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. We

---

[1] Palmer filed a motion to reconsider, which the circuit court denied at a subsequent hearing. The grounds for Palmer's reconsideration motion and the circuit court's reasons for denying reconsideration are not relevant to our discussion of the issues on appeal.

will uphold a circuit court's factual findings "unless they are clearly erroneous." *Id.* We decide independently whether those facts violate constitutional principles. *Id.*

¶13 Palmer argues that police did not have reasonable suspicion justifying the traffic stop because officers did not observe any erratic driving or other indicia of intoxication before the traffic stop and information provided to police regarding Palmer's possible drunk driving was from S.P., who did not have direct personal contact with Palmer. The State argues that the information provided by S.P. was sufficient to justify the traffic stop under controlling case law, including *State v. Blatterman*, 2015 WI 46, 362 Wis. 2d 138, 864 N.W.2d 26. We agree with the State.

¶14 In *Blatterman*, police conducted an investigative stop of Blatterman's vehicle based on a call made by Blatterman's wife to dispatch. *Blatterman*, 362 Wis. 2d 138, ¶1. Dispatch told officers that, according to his wife, "Blatterman had attempted to blow up their home by drawing gas into the house and that he may be intoxicated." *Id.*, ¶19. Blatterman's wife also explained that her husband "was leaving the house in a white minivan, with a specific license plate number." *Id.*, ¶3. The Wisconsin Supreme Court concluded that the stop was justified because "[t]he officers reasonably suspected that Blatterman had committed a crime." *Id.* at ¶19.

¶15 In the instant case, the information reported by S.P. provided Sergeant Holford with the reasonable suspicion required to stop Palmer for the purpose of investigating the suspected offense of drunk driving. S.P. identified herself and her relationship to Palmer. As his ex-wife, she explained that she was familiar with his posture and his stumbling when intoxicated and that she saw Palmer stumbling as he did when he was intoxicated. S.P. provided law enforcement with the approximate time Palmer left her apartment and a description of his vehicle,

5

including the license plate number. That Holford located Palmer in the vicinity and vehicle described by S.P. corroborated her observations.

¶16  Palmer attempts to distinguish *Blatterman* by pointing out that the wife in that case reported potential criminal behavior beyond drunk driving, namely, that her husband had tried to set fire to or blow up their house. That the officers in *Blatterman* might have had reasonable suspicion related to the commission of an additional crime is immaterial; nothing in the court's discussion suggests that reasonable suspicion was not created by the wife's allegation that her husband "may be intoxicated." *See id.*, ¶19. Further, here S.P. provided officers a more detailed account of Palmer's intoxication than the report of "possible intoxication" held to pass constitutional muster in *Blatterman*. *Id.*, ¶1. What S.P. told police provided greater reason for the officers to believe that Palmer was driving while intoxicated. As in *Blatterman*, officers were not required to personally observe Palmer's intoxication or erratic driving before initiating an investigative traffic stop.

¶17  Next, Palmer argues that officers unlawfully extended the traffic stop to investigate whether he was intoxicated. If, during a valid traffic stop, an officer becomes aware of facts supporting a reasonable suspicion that a separate offense has been committed, the stop may be extended to allow for additional investigation. *State v. Colstad*, 2003 WI App 25, ¶19, 260 Wis. 2d 406, 659 N.W.2d 394. The validity of the extension is evaluated under the same criteria as the initial stop. *Id.* To lawfully administer field sobriety tests, officers must have a reasonable suspicion of impairment. *Id.*

¶18  We conclude that officers had ample reason to suspect that Palmer was driving while intoxicated and to continue their investigative detention. At the time Palmer was pulled over, officers were aware of the information provided by

S.P. concerning Palmer's suspected intoxication. Having lawfully conducted a traffic stop, police acted within their authority by directing Palmer to exit his vehicle. *See State v. Floyd*, 2017 WI 78, ¶24, 377 Wis. 2d 394, 898 N.W.2d 560 (citing *State v. Johnson*, 2007 WI 32, ¶23, 299 Wis 2d 675, 729 N.W.2d 182). Officers observed that Palmer's balance was "[u]nsteady," and that he had difficulty simply taking a short walk around his truck and stepping up on a curb. Officer McDonald could smell intoxicants on Palmer's breath, and Palmer admitted that he had been drinking alcohol. There was ample reasonable suspicion for officers to administer standardized field sobriety testing to either confirm or dispel their suspicion that Palmer was intoxicated.

## CONCLUSION

¶19    For the reasons stated, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).