COURT OF APPEALS
DECISION
DATED AND FILED

July 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP683-CR**

Cir. Ct. No. **2018CF162**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHELLE L. JENSEN,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Barron County: JAMES C. BABLER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Michelle Jensen appeals from a judgment convicting her of possession of methamphetamine. Jensen contends that evidence

seized during a traffic stop should have been suppressed because police unlawfully prolonged the stop. We disagree and affirm.

## BACKGROUND

¶2 Former Turtle Lake Police Officer Adam Steffen stopped Jensen's vehicle because its exhaust system was loud, and Jensen appeared to be texting on her phone while driving. Steffen approached the vehicle, informed Jensen of the reason for the stop, and asked to see her proof of insurance. Jensen said that she would need to find her insurance information on her phone. Steffen decided to issue Jensen a written warning to have her exhaust system fixed within ten days. Issuing a written warning required Steffen to return to his squad car, open his TRAKS computer system, enter basic information about Jensen, her vehicle, and the relevant statute into the program, and then print a warning. Steffen estimated the process to generate a written warning would take about two minutes on average, depending upon whether the form autopopulated or Steffen was required to manually enter all of the necessary information.

¶3 About four minutes after Steffen returned to his squad car to process the written warning, Polk County Sheriff's Deputy Del Stone arrived at the scene with his police K9. Steffen did not call Stone to the scene and had no communication with him prior to his arrival. Rather, Stone had been traveling on the highway when he observed emergency lights from Steffen's squad car and decided on his own to pull over and assist in the traffic stop. Steffen and Stone had a brief conversation about the nature of the stop and routine safety issues before Steffen returned to processing the written warning. Steffen stated that the conversation was short because he did not like Stone and did not want to "deal with" him any more than necessary.

2

¶4      While Steffen was still in his squad car, Stone approached Jensen's vehicle and made contact with her. Stone believed that Jensen exhibited "beyond normal nervousness" during the interaction. Stone then asked Jensen to exit her vehicle, escorted her to the front of Steffen's squad car, patted her down for weapons, and told her to remain by Steffen's squad car while he conducted a "K9 sniff" of her vehicle. Stone retrieved his canine partner from his vehicle and walked the dog around Jensen's vehicle. The dog "alerted" on Jensen's vehicle, indicating the presence of drugs. The entire time between when Stone arrived on the scene and when the dog alerted on Jensen's vehicle was approximately five minutes.

¶5      As Stone was returning his dog to his squad car, Steffen exited his squad car and again made contact with Jensen. Steffen spent about two minutes issuing Jensen the exhaust warning and verifying Jensen's insurance information. The law enforcement officers then conducted the search of Jensen's vehicle that is the subject of the suppression motion.

¶6      At the suppression hearing, the circuit court made specific factual findings that Steffen did not ask Stone to perform a K9 sniff on Jensen's vehicle; that Steffen and Stone's initial conversation related to the original purpose of the traffic stop; that, because Steffen did not like Stone, Steffen did not give Stone "a wink and a nod" to perform the K9 sniff or otherwise purposely act to extend the stop so that Stone would have time for the K9 sniff; that Steffen's estimate that it would take him only two minutes to prepare the citation was "unreasonable" and "grossly inadequate"; that Steffen was working on creating the written warning on his laptop the entire time Stone was interacting with Jensen and conducting the K9 sniff; and that Stone completed the K9 sniff before Steffen completed the tasks related to the original reason for the traffic stop.

¶7 The circuit court concluded there was no constitutional violation because the K9 sniff did not add any time at all to the permissible length of the traffic stop. The court denied Jensen's suppression motion, and Jensen appeals.

## DISCUSSION

¶8 When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2019-20)[1]; *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48. We will independently determine, however, whether the facts found by the circuit court satisfy applicable constitutional provisions. *Hindsley*, 237 Wis. 2d 358, ¶22.

¶9 An investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Thus, when an initially justified detention of an individual extends beyond the purpose of the stop, it becomes illegal. *State v. Griffith*, 2000 WI 72, ¶38, 236 Wis. 2d 48, 613 N.W.2d 72. However, routine measures such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance do not unreasonably extend a traffic stop because they are related to the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. *See Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (holding that a dog sniff is not part of the traffic mission and does not justify prolonged detention once a ticket has been issued). Moreover, if

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

during an investigatory stop, an officer becomes aware of facts sufficient to give rise to a reasonable suspicion that the person has committed or is committing a distinct offense, the purpose of the stop may expand and the length of the stop may be properly extended to investigate the new suspicion. *State v. Colstad*, 2003 WI App 25, ¶¶11-13, 260 Wis. 2d 406, 659 N.W.2d 394.

¶10    Jensen first challenges as clearly erroneous the circuit court's finding regarding the inaccuracy of Steffen's estimate that generating a written warning would only take two minutes. Next, from the alternative premise that the two-minute estimate was in fact accurate, Jensen argues that Steffen impermissibly extended the stop by about six minutes, that Jensen deems to be unaccounted for while Steffen waited in his squad car for Stone to finish the K9 sniff.

¶11    We do not agree that the circuit court's finding was clearly erroneous. A factual finding is not clearly erroneous unless—after accepting all credibility determinations made and reasonable inferences drawn by the fact finder—the great weight and preponderance of the evidence support a contrary finding. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643-44, 340 N.W.2d 575 (Ct. App. 1993).

¶12    Here, Steffen had already been working on the written warning in his squad car for four minutes before Stone arrived at the scene. That fact alone would support the circuit court's finding that Steffen's estimate as to how long it would take to generate the written warning was "grossly inadequate." The amount of time Steffen had been working on the written warning before Stone arrived would also support a reasonable inference that the citation form did not autopopulate and that Steffen was required to manually enter all of the necessary

5

information. Having to manually enter all of the information would, in turn, lead to a further reasonable inference that generating the written warning in this case would have taken longer than the "average" time to do so.

¶13 In addition, Steffen expressly testified that he was "doing stuff on the computer" while Stone was speaking to Jensen and conducting the K9 sniff. The circuit court implicitly determined that testimony was credible when the court made reference to it and commented that there was no indication that Steffen just sat in the squad car and did nothing but watch the dog sniff rather than work on the written warning.

¶14 Jensen does not point to any evidence—much less the great weight of the evidence—that directly contradicts Steffen's testimony that he was working on his computer while Stone conducted the K9 sniff. Rather, Jensen urges this court to draw an inference contrary to the reasonable inferences and credibility determinations supporting the circuit court's determination. We will not do so.

¶15 Having accepted the circuit court's factual findings, we conclude that they support the conclusion that the police did not unlawfully extend the duration of Jensen's traffic stop to conduct a drug investigation. The K9 sniff was conducted contemporaneously with the investigation into, and written warning for, Jensen's defective exhaust system. We therefore affirm the suppression ruling and judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.