COURT OF APPEALS
DECISION
DATED AND FILED

December 29, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP592-CR**

Cir. Ct. No. **2017CF28**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

NICOLE MARIE DEGRAVE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Florence County: LEON D. STENZ, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Nicole DeGrave appeals from an amended judgment convicting her of possession of methamphetamine. She challenges the

denial of two suppression motions that she filed prior to her entry of a no-contest plea. Specifically, she contends that law enforcement officers improperly: (1) extended the duration of a traffic stop to allow a "canine sniff" of her vehicle; and (2) exceeded the scope of a consensual search of the vehicle. We conclude that the canine sniff did not impermissibly extend the duration of the traffic stop and that the search of the vehicle was authorized as being incident to DeGrave's arrest, regardless of any purported consent. Accordingly, we affirm the judgment.

## BACKGROUND

¶2      The circuit court found the following facts based upon testimony from the first suppression hearing, which challenged the duration of the traffic stop.[1] Florence County Deputy Sheriff Kyle Liebergen pulled over DeGrave's car for speeding at 5:01 p.m. Liebergen spent several minutes gathering routine traffic-stop-related information from DeGrave and her four passengers before returning to his squad car. He then radioed for a nearby K-9 unit to come to the scene, asked dispatch to verify the information provided by DeGrave and her passengers and to check for outstanding warrants for them, and then opened up an application on his squad car computer at 5:05 p.m. to create a written speeding warning.

¶3      A Marinette County K-9 unit arrived at the scene of the traffic stop a few minutes after Liebergen returned to his squad car and shortly after Liebergen

---

[1] DeGrave points to a statement in one of the police reports that seemingly conflicts with some testimony, but it was within the circuit court's discretion to resolve any conflicts in the evidence. Thus, the court's findings based upon the testimony are not clearly erroneous.

began typing information for the speeding warning into his computer. The K-9 officer briefly spoke to Liebergen through Liebergen's squad car window to ascertain how many people were in the stopped vehicle. The K-9 officer's dog then sniffed around the exterior of the stopped vehicle for one to two minutes, and the dog positively alerted for the presence of drugs as early as 5:09 p.m. and no later than 5:12 p.m.

¶4    Meanwhile, it took Liebergen four to five minutes, after opening the computer application, to complete the written warning, which was done by 5:09 to 5:10 p.m. Liebergen then returned to DeGrave's vehicle and took an additional unspecified amount of time to have DeGrave exit her vehicle, to issue her the written warning, and to explain the warning to her.

¶5    Florence County Deputy Sheriff Michael Short testified at the second suppression hearing—challenging the consent given by DeGrave—that he arrived at the scene as a backup officer after the K-9 unit was already there and that he was present when Liebergen directed DeGrave to exit the vehicle. Short performed a protective pat-down search on DeGrave and felt a cylindrical object in her right front pocket that he believed, from his training, to be a straw segment used as drug paraphernalia. When Short asked DeGrave what the object was, she pulled a straw segment out of her pocket and handed it over. The straw had a substance on it that field-tested positive for methamphetamine. Liebergen and the K-9 officer then performed a search of DeGrave's vehicle while Short left to answer another call.

¶6    After Short returned to the scene, he heard Liebergen advise DeGrave that she was under arrest and saw him place her in handcuffs. DeGrave asked if Short would retrieve her cell phone from her purse in the vehicle so that

3

she could make a call. While looking for the phone, Short saw a compact mirror in DeGrave's purse. Based upon his experience that compact mirrors are often used to snort crushed drugs, Short flipped open the compact and found powder on the mirror's surface that later tested positive for methamphetamine.

¶7 The circuit court found that Liebergen spent less than fifteen seconds deviating from the traffic mission by calling for the K-9 unit and very briefly speaking with the K-9 officer through the squad car window while he was writing the warning. The court further determined that the written warning ultimately was issued after the dog had already alerted and within the window of eight-to-fourteen minutes that Liebergen testified a normal traffic stop would take. The court concluded the dog sniff did not impermissibly extend the stop beyond the reasonable time needed for a traffic stop. The court also concluded that flipping open the compact mirror was permissible as a search incident to arrest. It denied both suppression motions, and DeGrave now challenges those decisions on appeal.

## DISCUSSION

¶8 When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2019-20); *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48. We will independently determine, however, whether the facts found by the circuit court satisfy applicable constitutional provisions. *Hindsley*, 237 Wis. 2d 358, ¶22.

### 1. Duration of the Traffic Stop

¶9 It is constitutionally permissible under the Fourth Amendment for a law enforcement officer to briefly detain an individual for investigative

4

questioning when there exists a reasonable suspicion, based upon specific and articulable facts together with rational inferences drawn from those facts, that criminal activity may be afoot, and that action regarding that criminal activity would be appropriate. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). An investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). However, if during an investigatory stop an officer becomes aware of facts sufficient to give rise to a reasonable suspicion that the person has committed or is committing a distinct offense, the purpose of the stop may expand and the length of the stop may be properly extended to investigate the new suspicion. *State v. Colstad*, 2003 WI App 25, ¶¶11-13, 260 Wis. 2d 406, 659 N.W.2d 394.

¶10     In the context of a traffic stop, routine measures such as checking a driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance do not unreasonably extend the stop because they are related to the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (holding that a dog sniff is not part of the traffic mission, and it does not justify prolonged detention once a ticket has been issued). The authority for a traffic stop ends "when tasks tied to the traffic infraction are—*or reasonably should have been*—completed." *Id.* (emphasis added).

¶11     The question here, then, is whether the tasks related to DeGrave's traffic stop reasonably should have been completed before the K-9 unit dog alerted to the presence of drugs, thereby providing reasonable suspicion to extend the stop. We agree with the circuit court that the alert occurred before the traffic stop reasonably should have been completed.

5

¶12     First, it was reasonable for Liebergen to take four to five minutes to complete the written warning while also awaiting a response from dispatch, which was searching for the driver's and passengers' information.  Second, it took Liebergen fifteen seconds to call for the K-9 unit and advise the K-9 officer about the number of people in the stopped vehicle.  That amount of time was less than the time between when the alert occurred—which was shortly before Liebergen had completed the written warning—and when Liebergen reasonably would have been able to exit the squad car, approach DeGrave's vehicle, have DeGrave exit her vehicle, return her documents, issue her the written warning, and explain the warning to her.

## 2.  Search Incident to Arrest

¶13     Law enforcement officers may search a compartment in a vehicle incident to an arrest made during a traffic stop when it is reasonable to believe either that the arrested person could access the vehicle at the time of the search or that the vehicle contains evidence related to the offense of arrest.  *Arizona v. Gant*, 556 U.S. 332, 343 (2009).  Here, it was reasonable to believe that a driver who had a straw with drug residue on it in her pocket could also have drugs or drug paraphernalia in a purse located in the vehicle.  Such evidence clearly would be related to the arrest.

¶14     DeGrave argues that any search of her purse was an "unreasonable continuance" of the "probable cause" search of the vehicle that Liebergen and the K-9 officer conducted while Short was away from the scene.  That probable cause search, however, was conducted *prior* to DeGrave's arrest, and there was no testimony that it included a search of the contents of DeGrave's purse.  DeGrave provides no authority holding that a search incident to arrest cannot be conducted

6

if another officer has already conducted a search of a surrounding area prior to arrest, authorized by a separate doctrine.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).