COURT OF APPEALS
DECISION
DATED AND FILED

March 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP1005-CR**

Cir. Ct. No. **2020CF1002**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

AMBER N. SPATZ,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Marathon County: SUZANNE C. O'NEILL, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Amber Spatz appeals from a judgment convicting her of possession of methamphetamine. She challenges the circuit court's denial

of the suppression motion that she filed prior to her entry of a no-contest plea. Specifically, Spatz contends that law enforcement officers impermissibly extended the duration of a traffic stop to allow a "dog sniff" of her vehicle. We agree and therefore reverse the suppression ruling. We remand the matter with directions that the judgment of conviction be vacated and the proceeding be returned to its pre-plea status.

## BACKGROUND

¶2     Following a suppression hearing at which the State produced testimony from Marathon County Sheriff's Deputy Charles Hessil and a dashboard camera video, the circuit court made the following findings.

¶3     On October 9, 2020, Hessil was on patrol in his marked squad car, situated in a "turnaround" on a highway median perpendicular to traffic, waiting to make a turn. Hessil was a member of a K-9 unit and had a dog trained to sniff for drugs with him in his squad car.

¶4     Spatz's vehicle passed Hessil's location shortly after 3:00 a.m. Just as Hessil pulled onto the highway behind Spatz, Spatz exited the highway in the far left of three lanes on an exit ramp. Spatz then moved to the far-right lane as she approached an intersection and turned right onto a county road, shortly before turning left onto another road.

¶5     Hessil followed Spatz and observed that her vehicle had a cracked windshield that could impair her visibility. Hessil initiated a traffic stop at

approximately[1] 3:06 a.m. for the sole purpose of addressing the cracked windshield, without observing any moving violations or suspicious behavior beyond changing lanes on the exit ramp.

¶6      Having already run Spatz's license plate, Hessil approached Spatz in her vehicle, ascertained that she had a valid driver's license, and verified her identity as the registered owner of the vehicle. Hessil then asked Spatz where she was coming from and where she was going. Spatz responded that she was going home after having dropped a friend off at a Motel 6, and she gave a home address matching that on her driver's license.

¶7      At 3:09 a.m., Hessil returned to his squad car to enter information in his call log documenting the stop, which he said "didn't take very long." Because Hessil was aware of a lot of criminal activity occurring at the Motel 6 Spatz mentioned, he next ran a criminal history check on Spatz and discovered that she had been convicted of several drug offenses in 2014. Additionally, because Hessil was suspicious that the exit Spatz took did not seem to be the quickest route to her home address and may have been taken to evade his squad car, he used his computer mapping system to map out a route of travel between the location of the stop and Spatz's address. Hessil then began working on a written warning for the cracked windshield.

¶8      Before Hessil wrote the warning, a second deputy arrived at the scene to check whether Hessil needed assistance. Hessil and the second deputy

---

[1] Because the additional seconds are not dispositive of the issues on this appeal, we round the times off to the nearest minute.

then engaged in a conversation, beginning at 3:16 a.m., about whether Hessil had enough information to warrant a dog sniff on the exterior of Spatz's vehicle.

¶9 At 3:23 a.m., when he finished writing the warning, Hessil realized that his printer was out of paper. At that point, he asked the second deputy to reload the paper in the printer while Hessil secured his K-9 to conduct a dog sniff. The K-9 alerted to drugs within twenty-five seconds after being secured—before the second deputy had printed out the warning and about nineteen minutes after the stop was initiated.

¶10 Hessil testified that a standard traffic stop, in which he is not investigating additional suspicions, normally takes between nine and twelve minutes.

## DISCUSSION

¶11 WISCONSIN STAT. § 971.31(1) (2023-24)[2] authorizes review of a suppression ruling notwithstanding a defendant's subsequent plea of no contest. When reviewing a suppression ruling, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2); *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48. We will independently determine, however, whether the facts found by the circuit court satisfy applicable constitutional provisions. *Hindsley*, 237 Wis. 2d 358, ¶22.

¶12 It is constitutionally permissible under the Fourth Amendment for a law enforcement officer to briefly detain an individual for investigative

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

questioning when there exists a reasonable suspicion, based upon specific and articulable facts together with rational inferences drawn from those facts, that criminal activity may be afoot and that action regarding that criminal activity would be appropriate. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). An investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). However, if during an investigatory stop an officer becomes aware of facts sufficient to give rise to a reasonable suspicion that the person has committed or is committing a distinct offense, the purpose of the stop may expand and the length of the stop may be properly extended to investigate the new suspicion. *State v. Colstad*, 2003 WI App 25, ¶¶11-13, 260 Wis. 2d 406, 659 N.W.2d 394.

¶13 In the context of a traffic stop, routine measures, such as checking a driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance, do not unreasonably extend the stop because they are related to the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (holding that a dog sniff is not part of the traffic mission and that it does not justify prolonged detention once a ticket has been issued). The authority for a traffic stop ends "when tasks tied to the traffic infraction are—*or reasonably should have been*—completed." *Id.* (emphasis added).

¶14 The traffic stop here was reasonable based upon the officer's observation of a cracked windshield. The questions before us, then, are: (1) whether any information learned during the execution of tasks related to issuing a citation for the cracked windshield created reasonable suspicion to extend the stop; and (2) if not, whether the tasks related to the traffic stop

5

reasonably should have been completed before the K-9 alerted to the presence of drugs.

¶15 We first observe that Hessil's inquiries into whether Spatz had a valid driver's license, whether she was the owner of the vehicle, whether the vehicle's registration was current, whether Spatz had any outstanding warrants, and from where-to-where she was traveling were all routine and reasonable questions related to the mission of the traffic stop under **Rodriguez**. *See id.* However, mapping out the most direct route to Spatz's home and discussing with another officer whether to conduct a K-9 sniff of Spatz's vehicle for drugs had nothing to do with issuing a citation for a cracked windshield or ensuring officer safety. These tasks added approximately five minutes to the length of the stop.

¶16 The State contends that it had reasonable suspicion to extend the traffic stop based upon Spatz's 2014 drug convictions, her circuitous route home, her having dropped a friend off at the "notorious Wausau Motel 6," a known "drug hotel," in the middle of the night, and her abrupt shifting of lanes on the exit ramp. We disagree.

¶17 To begin, drug convictions that are several years old do not in and of themselves provide reasonable suspicion of current involvement in drug activity. Furthermore, Spatz's having dropped someone else off at a hotel known for drug activity did not add much to any such suspicion because there was no information that Spatz herself had entered the hotel. Finally, Spatz's route home did not add much to any such suspicion because the circuit court did not find that Spatz's route, including her choice of lane on the exit ramp, was an unreasonable travel route home from the hotel.

¶18     We conclude that law enforcement officers unreasonably expanded the length of the traffic stop beyond what was needed to issue a citation for a cracked windshield, without sufficient additional facts to raise a reasonable suspicion that Spatz was currently involved in drug activity. Therefore, the circuit court erred by denying Spatz's motion to suppress. Accordingly, we reverse the suppression ruling and judgment of conviction, and we remand the matter for further proceedings, including the withdrawal of Spatz's plea.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.