COURT OF APPEALS
DECISION
DATED AND FILED

August 17, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP98**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV611

IN COURT OF APPEALS
DISTRICT II

---

CITY OF WEST BEND,

   PLAINTIFF-RESPONDENT,

 V.

PETER F. PARSONS,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Washington County: TODD K. MARTENS, Judge. *Affirmed*.

¶1     NEUBAUER, J.[1]  Peter F. Parsons was convicted after a bench trial of one count of operating a motor vehicle with a restricted controlled substance in

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(b) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

violation of WIS. STAT. § 346.63(1)(am), as adopted by a City of West Bend municipal ordinance. Parsons appeals the conviction, arguing that the officer who stopped him lacked reasonable suspicion to prolong his detention for the purpose of conducting field sobriety tests. For the reasons that follow, we reject Parsons' arguments and affirm the conviction.

## BACKROUND

¶2     On February 27, 2019, at approximately 12:20 a.m., Parsons was stopped by Officer Brock Bateman of the West Bend Police Department for suspicion of having an expired license plate on his vehicle. As part of the stop, Bateman engaged his "takedown" lights and, as he approached the vehicle, observed what appeared to be a temporary license tag in the car's rear window that was partially obscured by snow.

¶3     Bateman approached the vehicle and saw that Parsons was the only occupant. After confirming Parsons' identity from his driver's license, Bateman testified that he "began a conversation with [Parsons], and observed that most of his responses were a response of a hum. Meaning, he was shaking his head yes and no, and keeping his mouth closed while responding."[2] Parsons was also smoking a cigarette, which Bateman knew at that time of night to be "a common tactic to use to mask the odor of illicit substances and/or intoxicants." Bateman also observed ashes from the cigarette falling into Parsons' lap and "burning a

---

[2] Video of Bateman's initial approach to Parsons' vehicle and conversation with him was played at the motion to suppress hearing. As the video was played, Bateman acknowledged that Parsons responded with one or two-word answers to most of his questions and "mmm hmm" to only some of them.

2

hole through his pants," a fact of which Parsons seemed unaware. Parsons told Bateman that he had come from Applebee's restaurant where he had "one drink."

¶4     Bateman returned to his squad car and requested a second officer because he intended to ask Parsons to perform field sobriety tests. He returned to Parsons' vehicle and asked him to get out, in part to remove him from the cigarette smell. Bateman told Parsons that he was concerned that Parsons may be impaired and asked whether Parsons was taking any prescriptions medications because, according to Bateman, "that could play a factor with someone who has been drinking alcohol." Parsons indicated that he was taking the drug Sertraline for depression. Bateman indicated that he would like to conduct a field sobriety test, but would like to do so indoors because the ground was snow covered, snow was falling, and the temperature was cold. Parsons agreed to go to a nearby fire station for the tests.

¶5     Parsons was subsequently arrested, and a blood test revealed the presence of Delta9-THC, a restricted controlled substance. Parsons was issued citations for (1) violating two drug-related municipal ordinances; (2) operating a motor vehicle while under the influence (OWI) in violation of WIS. STAT. § 346.63(1)(a); and (3) operating a motor vehicle with a restricted controlled substance in violation of § 346.63(1)(am). Both of these statutes are adopted by WEST BEND, WIS., TRAFFIC CODE § 7.01 (2022). The Mid-Moraine Municipal Court found Parsons guilty of all four offenses. Parsons timely filed a notice of de novo appeal to the Washington County Circuit Court.

¶6     In the circuit court, Parsons filed a motion to suppress evidence obtained during and after the stop, arguing that it had been obtained in violation of the Fourth Amendment and the Wisconsin Constitution. On March 19, 2021, the

court held an evidentiary hearing at which Bateman testified and video of the stop was played.  At the conclusion of the hearing, the court denied Parsons' motion. The court noted Parsons was not challenging the basis for the initial stop, but instead challenged whether Bateman had reasonable suspicion to extend the stop to perform field sobriety tests.  The court then reviewed the circumstances of the stop, noting that officers are "not required to rule out innocent explanations for suspicious conduct."  It concluded that Bateman's observations "were sufficient to authorize him legally to request … [Parsons] do field sobriety tests."  Parsons was subsequently found not guilty on the OWI charge but guilty of operating with a restricted controlled substance.[3]

¶7      Parsons appeals.

## DISCUSSION

¶8      Whether evidence must be suppressed because it was obtained in violation of the Fourth Amendment is a question of constitutional fact.  *State v. Smith*, 2018 WI 2, ¶9, 379 Wis. 2d 86, 905 N.W.2d 353.  The circuit court's findings of fact are upheld unless clearly erroneous, but we "review de novo the application of constitutional principles to those facts."  *State v. Dumstrey*, 2015 WI App 5, ¶7, 359 Wis. 2d 624, 859 N.W.2d 138, *aff'd,* 2016 WI 3, 366 Wis. 2d 64, 873 N.W.2d 502.  "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence."  *State v. Anderson,* 2019 WI 97, ¶20, 389 Wis. 2d 106, 935 N.W.2d 285.

---

[3] The two drug-related citations were dismissed on the City's motion.

¶9    As in the circuit court, Parsons does not challenge the basis for the initial stop. Instead, he argues that Bateman lacked sufficient cause to extend the stop under the Fourth Amendment. Temporary detention during a traffic stop is a seizure, and therefore, it must conform to the constitutional requirement of reasonableness. *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569. A law enforcement "officer may stop a vehicle when he or she reasonably believes the driver is violating[, or has violated,] a traffic law." *State v. Hogan*, 2015 WI 76, ¶34, 364 Wis. 2d 167, 868 N.W.2d 124 (citation omitted). The officer may extend the stop if he or she "becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate" from the violation that prompted the officer's initial investigation. *State v. Colstad*, 2003 WI App 25, ¶19, 260 Wis. 2d 406, 659 N.W.2d 394 (quoting *State v. Betow*, 226 Wis. 2d 90, 94-95, 593 N.W.2d 499 (Ct. App. 1999)). An extended inquiry must be supported by reasonable suspicion. *Hogan*, 364 Wis. 2d 167, ¶35.

¶10    Reasonable suspicion is "a suspicion grounded in specific, articulable facts and reasonable inferences from those facts, that the individual has committed [or was committing or is about to commit] a crime." *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996) (alteration in the original; citation omitted). Reasonable suspicion is a "common sense test" that asks: "[U]nder all the facts and circumstances present, what would a reasonable [law enforcement] officer reasonably suspect in light of his or her training and experience[?]" *Colstad*, 260 Wis. 2d 406, ¶8 (citation omitted); *see also Hogan*, 364 Wis. 2d 167, ¶¶36-37. "[S]uspicious conduct by its very nature is ambiguous, and the [principal] function of the investigative stop is to quickly resolve that ambiguity." *State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990). Reasonable

5

suspicion is "a low bar." *State v. Nimmer*, 2022 WI 47, ¶25, ___ Wis. 2d ___, 975 N.W.2d 598 (citation omitted). "[T]he level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause[.]" *Id.* (alteration in original; citation omitted).

¶11     Parsons argues that Bateman's decision to extend the traffic stop was not supported by reasonable suspicion; as a result, he argues, the prolonged stop became an unlawful seizure. However, when the totality of the facts present at the scene are considered, we conclude that those facts amount to reasonable suspicion that Parsons was operating under the influence. *See State v. Lange*, 2009 WI 49, ¶23, 317 Wis. 2d 383, 766 N.W.2d 551 (a court considers whether "the totality of circumstances within [the officer's] knowledge at the time of the arrest would lead a reasonable police officer to believe ... that the defendant was [driving] under the influence of an intoxicant").

¶12     In its decision, the circuit court identified several articulable facts which, in its view, established reasonable suspicion. First, the court noted the time of day—"after midnight"—which supports "a stronger inference that a higher percentage of people driving are intoxicated." *State v. Gonzalez*, No. 2013AP2585-CR, unpublished slip op. ¶16 (WI App May 8, 2014)[4]; *see also Lange*, 317 Wis. 2d 383, ¶32. Second, the court found that Bateman observed Parsons smoking, which in the officer's experience, is something intoxicated drivers do to "try to mask the odor of intoxicants." We have previously

---

[4] One-judge opinions are not precedent, but may be cited for persuasive value. WIS. STAT. RULE 809.23(3)(b).

acknowledged that smoking can "be reasonably viewed as at least a possible attempt to cover up the smell of ingested alcohol." *State v. Kolman*, No. 2011AP1917-CR, unpublished slip op. ¶22 (WI App Jan. 12, 2012). Third, the court found that Bateman observed fallen ashes from the cigarette burning a hole in Parsons' pants and that Parsons seemed to be unaware this was happening, which the court stated "certainly can be interpreted as a sign of intoxication." Parsons does not argue that any of these findings was clearly erroneous.

¶13 In addition, the evidence showed that Parsons admitted to having consumed one drink at a restaurant that night. Parsons also told Bateman that he was taking a prescription medication, something which Bateman testified could, in general, be "a factor with someone who has been drinking alcohol." Finally, Parsons answered some of Bateman's questions with "mmm hmm" rather than a fully verbalized response. Taken together, these facts provided reasonable suspicion to extend the stop to perform the field sobriety tests.

¶14 Parsons' arguments to the contrary are not persuasive. First, he highlights signs of impairment that Bateman did *not* observe, such as slurred speech, bloodshot or glassy eyes, an odor of intoxicants, problems with coordination or mentation, or an uncooperative attitude. Parsons also emphasizes that Bateman did not testify that he observed Parsons violate any traffic laws, swerve within his lane of traffic, or park his vehicle improperly. Parsons is correct that the record is devoid of evidence suggesting these factors were present. But the absence of these factors does not eliminate or diminish the significance of the factors Bateman did observe and the reasonable inferences therefrom. Those factors and inferences provided reasonable suspicion to suggest that Parsons was driving while under the influence "to a degree which render[ed] him … incapable of safely driving." *See* WIS. STAT. § 346.63(1)(a).

7

¶15    Next, Parsons challenges several factors Bateman relied on and the reasonableness of inferences he drew from them.  He argues that cigarette smoking is legal and common and thus Bateman's inference that Parsons was attempting to mask the odor of intoxicants was unreasonable.  He also argues that his admission to having consumed one drink at a restaurant that night is not sufficient to support reasonable suspicion because not every person who has consumed alcohol is under the influence.

¶16    These arguments misapprehend the nature of our inquiry.  Our role is not to pick apart the factors an officer relies on one by one and examine whether they *individually* support a finding of reasonable suspicion, but rather to focus on "the whole picture viewed together." *Nimmer*, ___ Wis. 2d ___, ¶24, 975 N.W.2d 598 (citation omitted).  Nor are officers obliged to disregard a reasonable inference drawn from one factor merely because another, innocent inference is available.  *See Anderson*, 155 Wis. 2d at 84 ("[I]f any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers have the right to temporarily detain the individual for the purpose of inquiry.").  We are to consider the totality of the circumstances known to the officer and determine what he or she would "reasonably suspect in light of his or her training and experience." *Colstad*, 260 Wis. 2d 406, ¶8 (citation omitted).  Here, the officer stopped Parsons at a time of night in which impaired driving is known to be more likely to occur, observed him smoking a cigarette and seemingly unaware that its ashes were burning through his clothing, heard him admit that he had consumed one alcoholic drink at the restaurant he was driving from, and heard that he was also taking a medication that could impact impairment.  These circumstances, viewed in their totality, provided grounds for the officer to reasonably suspect that Parsons was driving

while impaired and materially distinguish the present case from the cases upon which Parsons principally relies. *See* ***Gonzalez***, No. 2013AP2585, ¶¶14, 16-17 (holding that officer lacked reasonable suspicion to extend traffic stop where only factor suggesting driver was impaired was odor of intoxicants, defendant "did not admit to consuming any alcoholic beverages," stop took place before midnight, and officer observed "no physical indicators of intoxication" and no evidence of impairment from defendant's driving before stop); ***County of Sauk v. Leon***, No. 2010AP1593, unpublished slip op. ¶¶18, 21, 25-26 (WI App Nov. 24, 2010) (holding that officer lacked reasonable suspicion to detain defendant to perform field sobriety tests where officer "was not aware of any driving behavior … indicative of impaired driving," defendant consistently acknowledged having consumed one beer on evening of stop, stop occurred before midnight, and defendant did not display physical signs of impairment).

## CONCLUSION

¶17 Based on the totality of the circumstances, we conclude that the officer had the requisite reasonable suspicion to extend the stop of Parsons' vehicle to administer field sobriety tests. We therefore uphold the circuit court's denial of Parsons' motion to suppress and affirm the judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9