COURT OF APPEALS
DECISION
DATED AND FILED

October 3, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1717-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF508

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DAVID J. VANREMORTEL,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Outagamie County: GREGORY B. GILL, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. David VanRemortel appeals from a judgment convicting him of a seventh offense operating a motor vehicle while under the

influence of an intoxicant. He challenges a suppression ruling, claiming that: (1) the police lacked reasonable suspicion for a traffic stop that was not based upon an observed traffic violation; and (2) the police impermissibly extended the stop to conduct field sobriety tests. We conclude that the totality of the circumstances provided sufficient grounds for both the stop and the subsequent sobriety tests. Accordingly, we affirm.

## BACKGROUND

¶2 A Village of Hortonville patrol officer observed VanRemortel's vehicle weaving within—but not deviating from—its lane of traffic on a Hortonville street at about 3:22 a.m. The officer followed the vehicle in his squad car, suspecting that its driver could be impaired. The officer did not observe any traffic violations, but he saw the vehicle make an abrupt turn onto a side street into a residential neighborhood as the squad car approached the vehicle. The officer thought it was unusual for a vehicle to drive on that street, particularly at that time of night, unless the destination was one of the houses in that neighborhood. The officer ran the vehicle's license plate and noted the vehicle was not registered in Hortonville but, rather, in "the next town over."

¶3 The vehicle made a number of turns that had it doubling back on its prior routes and driving away from the squad car. Eventually, the vehicle parked in the parking lot of a nearby apartment complex with its headlights off for five minutes. When the vehicle left the parking lot without the driver having exited, the officer pulled the vehicle over based on what he viewed as a suspicious driving pattern.

¶4 VanRemortel, who was the sole occupant of the vehicle, told the officer that he might have had a friend at the apartment complex. VanRemortel

stumbled over his words, however, and could not come up with a name for the supposed friend. Next, VanRemortel claimed that he was trying to go fishing on the Sturgeon Trail, which the officer knew was nowhere near Hortonville. The officer also detected a slight odor of alcohol coming from the vehicle and observed that VanRemortel's eyes were glossy, with "heavy" eyelids that the officer viewed as an indicator of impairment. When asked, VanRemortel admitted that he had consumed two beers at a bar.

¶5 At that point, the officer returned to his squad car to review VanRemortel's driving record and learned that VanRemortel had prior OWI convictions that subjected him to a lower 0.02 blood alcohol level. The officer then conducted field sobriety tests. Based upon VanRemortel's failures on multiple tests, the officer arrested VanRemortel for OWI.

¶6 Once charged, VanRemortel moved to suppress all evidence that had been collected after his arrest, including the results of a blood alcohol test and some drug-related items found during a search of his vehicle. After the circuit court denied the suppression motion, VanRemortel entered a no-contest plea. VanRemortel now appeals, challenging the suppression ruling.

## DISCUSSION

¶7 When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2021-22); *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48. However, we will independently determine whether the facts found by the court satisfy applicable constitutional provisions. *Hindsley*, 237 Wis. 2d 358, ¶22.

¶8      It is constitutionally permissible for a law enforcement officer to briefly detain an individual for investigative questioning when there exists a reasonable suspicion, based upon specific and articulable facts together with rational inferences drawn from those facts, that criminal activity may be afoot, and that action would be appropriate. *Terry v. Ohio*, 392 U.S. 1, 21-22, 30 (1968). "The question of what constitutes reasonable suspicion is a common sense test. Under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience?" *State v. Jackson*, 147 Wis. 2d 824, 834, 434 N.W.2d 386 (1989).

¶9      An investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Thus, when an initially justified detention of an individual extends beyond the purpose of the stop, it becomes illegal. *State v. Griffith*, 2000 WI 72, ¶54, 236 Wis. 2d 48, 613 N.W.2d 72. However, if during an investigatory stop an officer becomes aware of additional facts sufficient to give rise to a reasonable suspicion that the person has committed or is committing a distinct offense, the purpose of the stop may expand and the length of the stop may be properly extended to investigate the new suspicion. *State v. Colstad*, 2003 WI App 25, ¶¶11-13, 260 Wis. 2d 406, 659 N.W.2d 394.

¶10     VanRemortel first cites *State v. Post*, 2007 WI 60, 301 Wis. 2d 1, 733 N.W.2d 634, for the proposition that repeated weaving within a lane of traffic does not alone provide reasonable suspicion for a traffic stop. *Id.*, ¶2. While we agree with that proposition, here the officer did not pull over VanRemortel solely because VanRemortel's vehicle was weaving within its lane. Rather, the officer's suspicions were aroused by the combination of: (1) a vehicle not registered to anyone in Hortonville driving through residential Hortonville streets in the middle

of the night; (2) the vehicle weaving within its lane; (3) the vehicle doubling back on its route and turning away from the following squad car; and (4) the driver of the vehicle sitting in a parking lot for five minutes with the vehicle's headlights off without exiting the vehicle before beginning to drive again.

¶11    VanRemortel emphasizes that none of these observed behaviors was itself illegal. It is not necessary, however, that an officer observe illegal behavior in order to conduct an investigatory stop. Evasive behavior—that is, conduct suggesting that an individual is attempting to avoid police contact—can give rise to a reasonable suspicion of criminal activity and therefore justify an investigatory stop in and of itself. *State v. Anderson*, 155 Wis. 2d 77, 88, 454 N.W.2d 763 (1990). Moreover, the police are not required to rule out possible innocent explanations for evasive behavior or other suspicious conduct before initiating an investigatory stop; rather, resolution of any ambiguity about whether the observed conduct is innocent or linked to criminal activity is the very purpose of the detention. *Id.* at 84.

¶12    In *State v. Williamson*, 58 Wis. 2d 514, 206 N.W.2d 613 (1973), for instance, the supreme court found reasonable suspicion for a traffic stop when a vehicle twice pulled over to the side of the road as a police officer neared, remained parked with the engine running, and then left the area as the officer passed. *Id.* at 517-18. Taken together, the officer's observations here provided a reasonable suspicion that the driver of the vehicle was impaired and taking measures to avoid the following squad car. *See State v. Waldner*, 206 Wis. 2d 51, 58, 556 N.W.2d 681 (1996) (as facts accumulate, reasonable inferences may be drawn from their cumulative effect).

¶13 VanRemortel next cites ***Rodriguez v. United States***, 575 U.S. 348, 354 (2015), for the proposition that a traffic stop becomes unconstitutional when it is measurably extended by investigation into an unrelated offense. VanRemortel argues that the police impermissibly extended his traffic stop "into a separate and distinct OWI investigation" by conducting field sobriety tests. This argument is misguided because the officer here was not investigating a routine traffic violation as in ***Rodriguez***. Rather, the officer was investigating a reasonable suspicion that the driver of the vehicle was impaired.

¶14 Far from dispelling that suspicion, the information the officer collected after stopping VanRemortel—i.e., the odor of intoxicants, VanRemortel's glossy eyes and heavy eyelids, his failure to provide an adequate explanation for his driving pattern, his admission that he had consumed two beers, and his prior OWI convictions—all provided additional evidence supporting it. Thus, the sobriety tests effectuated the original purpose of the stop. The sobriety tests did not impermissibly extend the stop to investigate an unrelated offense.

¶15 We conclude that the circuit court properly denied the suppression motion. Accordingly, we affirm the judgment of conviction.

> *By the Court.—*Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).