COURT OF APPEALS
DECISION
DATED AND FILED

March 30, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.     2022AP1802-CR** | Cir. Ct. No. 2022CM111 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS DISTRICT IV** |

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

  V.

NOAH D. HARTWIG,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Jefferson County: ROBERT F. DEHRING, JR., Judge. *Affirmed and cause remanded for further proceedings.*

¶1    KLOPPENBURG, J.[1] During the course of a traffic stop, and following a search of his vehicle and person, Noah Hartwig was arrested for possession of drug paraphernalia, possession of oleoresin device, and possession of tetrahydrocannabinols (THC). Hartwig moved to suppress the evidence obtained during the search on the grounds that law enforcement unlawfully extended the traffic stop in order to conduct a drug investigation without having reasonable suspicion to do so, thereby violating his constitutional right against unreasonable seizures. After an evidentiary hearing, the circuit court granted Hartwig's motion to suppress the evidence obtained from the search of Hartwig's vehicle and his person. On appeal, the State argues that the circuit court erred in granting Hartwig's motion. For the reasons that follow, I affirm the court's suppression order and remand to the court for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2    After Hartwig filed his motion to suppress, the circuit court held an evidentiary hearing at which the arresting officer and Hartwig testified.

¶3    The officer, a deputy with the Jefferson County Sheriff's Office for 15 years with training in investigating drug cases, testified as follows. At 6:20 p.m. on January 15, 2020, the officer was patrolling the area of a Department of Natural Resources boat launch in the Town of Koshkonong. She saw a car parked in a corner of the lot. The car was unoccupied, with a purse on the front

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). By a separate order, I have denied Noah Hartwig's motion for a three-judge panel under WIS. STAT. § 752.31(3).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

seat.  It was dark and cold, and the ground was icy.  The officer, concerned that someone associated with the car might be in need of assistance, checked the surrounding area on foot and, finding nothing, returned to her squad car and asked dispatch to look up the phone number of the registered owner to check in with the owner and make sure everything was all right.  The officer's fully marked squad car was in the middle of the lot, with the headlights on.

¶4      As the officer waited for a response from dispatch, a Jeep pulled up next to the parked car.  The Jeep parked next to the driver's side of the car, 30-50 feet from the squad car.  A woman got out of the passenger side of the Jeep, looked at the officer in the squad car, and immediately got into the driver's side of the parked car.  The officer was unable to ascertain whether the woman was a juvenile.  At that point, the officer's original inquiry into the safety of the car's driver changed to an investigation of suspicious activity by both the woman and the driver of the Jeep, and she expected them to stay there until she completed the investigation.

¶5      The officer turned on her body camera and the emergency red and blue lights on top of her squad car and walked over to the passenger side of the car the woman had entered.[2]  The woman rolled down the front passenger side window, and the officer smelled an odor of marijuana coming out of the car; the officer could not determine whether the smell was coming from the woman or the car.

---

[2] The body camera video was received as an exhibit and pertinent portions were played at the hearing.

¶6    In response to the officer's questions, the woman said that she was 20 years old, had not been smoking and never used marijuana, and just came from Noah Hartwig's house and was being dropped off by Hartwig. The officer knew that Hartwig's house was about one mile from the boat launch and was familiar with Hartwig because the officer had previously seen Hartwig in the county jail and heard that he "was known to use controlled substances" in the past. Because the woman told the officer that she did not use marijuana, the officer considered whether the odor of marijuana was coming from her person after she had been in the Jeep. At that point, the officer was pursuing a drug investigation.

¶7    The officer returned to her squad car to enter the woman's information and arranged for an officer with a drug detection dog to come to the boat launch and have the dog perform a sniff outside both the car and the Jeep.

¶8    The officer then went to the driver's side of the Jeep to identify Hartwig and investigate whether "there was drug activity going on between" him and the woman. Hartwig was smoking a cigarette and the officer did not detect any odor of marijuana from Hartwig's person or the Jeep. Cigarette smoke generally masks the odor of fresh marijuana but not necessarily burnt marijuana; the officer could not recall whether the odor she smelled at the woman's car was of fresh or burnt marijuana. Hartwig explained why he was there, and there was nothing "suspicious" about his explanation. Specifically, both Hartwig and the woman explained that they had gone to his house and she left her car in the boat launch parking lot because the driveway at Hartwig's house had a lot of cars in it leaving no room for her to park there.

¶9    The officer asked when Hartwig last smoked marijuana and he said, "I don't have to answer that question." The officer then asked Hartwig for his

driver's license and he gave it to her. Hartwig asked the officer why she was stopping him and she answered, "Because of suspicious activity."

¶10 The officer returned to her squad car with Hartwig's license and still had the license when the canine officer arrived about 20 minutes later.[3] The dog indicated on both vehicles.

¶11 Hartwig testified as follows. He arranged to pick up the woman at the parking lot and bring her to his parents' house, where he was living at the time, hung out with her at the house for about one to two hours, and brought her back to the parking lot. The driveway at his parents' house was full of his parents' and sister's vehicles, and there was no space for another car to park in the driveway. Additionally, it was icy, the driveway is steep, and it is dangerous to park on the road because of the tight curve in the road. Hartwig did not hear the conversation between the officer and the woman at the woman's car, or at least was not "able to make out what was being said." He did not believe that he could leave when the officer parked her squad car behind him with the lights on.

¶12 The circuit court issued its ruling granting Hartwig's suppression motion after hearing the officer's and Hartwig's testimony and the parties' arguments. The court first determined that Hartwig was detained when the officer parked her squad car behind his Jeep and turned on the emergency lights. The court determined that the officer was initially properly exercising a community caretaker function when the officer investigated the parked car in the boat launch

---

[3] As the State notes, while the officer did not recall how long it took for the canine officer to arrive, the circuit court found that it took 20 minutes. That finding appears to be supported by Hartwig's counsel's cross-examination of the officer based on counsel's viewing of the body-camera video, and the State does not dispute that finding on appeal.

parking lot and went to talk to the woman when she saw the woman go from the Jeep into the parked car. However, the court did not find it suspicious that, "in the middle of winter," the woman hurriedly went from the Jeep to her car to start her car. The court determined that, at that point, before the officer went to talk to the woman, the officer had no reasonable suspicion to detain Hartwig. The court noted that there was no evidence that the parking lot was an area of known drug activity. The court said that, absent that kind of evidence, "dropping somebody off to their car is not reasonable suspicion of a crime in progress or having been committed."

¶13     Alternatively, the circuit court considered the officer's investigation of Hartwig "to the extent that things changed" after the officer went to the woman's car and smelled the odor of marijuana, and the woman said she never used marijuana and gave what might be a dubious explanation that she parked in the lot rather than at the house where she was hanging out because the driveway was full and she could not park there. In that event, the court determined that, in continuing the investigation, the officer lawfully asked Hartwig for his identification and name and address. The court found that Hartwig provided the information requested and gave an explanation that was consistent with the woman's explanation of why she parked in the lot. The court also found that Hartwig did not hear the conversation between the officer and the woman. The court determined that the investigation of Hartwig should have ended after the officer ran his license and found no issues such as concerns with its validity or outstanding warrants. At that point, according the court, the officer could only lawfully return the license to Hartwig and send him on his way.

¶14     The circuit court summarized its ruling as follows. The totality of circumstances consisted of Hartwig smoking a cigarette after dropping off

6

someone who smells of marijuana, and the officer having "heard while [Hartwig] was at the jail that he used controlled substances." Without more, the officer unlawfully extended the stop for a dog sniff in violation of Hartwig's constitutional rights.

## DISCUSSION

¶15    The Fourth Amendment of the United States Constitution and art. I, § 11 of the Wisconsin Constitution protect individuals from unreasonable searches and seizures.[4]    Whether evidence should be suppressed "is a question of constitutional fact," which is in turn a mixed question of law and fact to which appellate courts "apply a two-step standard of review." *State v. Post*, 2007 WI 60, ¶8, 301 Wis. 2d 1, 733 N.W.2d 634.    This court reviews the circuit court's findings of historical or evidentiary fact under the clearly erroneous standard; this court reviews independently the application of constitutional principles to those facts. *Id.*

¶16    Temporary detention during a traffic stop is a seizure and, therefore, it must conform to the constitutional requirement of reasonableness.  *Id.*, ¶12. "The burden of establishing that an investigative stop is reasonable falls on the [S]tate." *Id.*

¶17    A law enforcement officer may stop a vehicle when the officer possesses reasonable suspicion that, "in light of [the officer's] training and experience," a crime or other unlawful offense has been or may be committed.

---

[4] The Wisconsin Constitution contains substantively identical protections that are usually interpreted coextensively with the United States Supreme Court's interpretation of the Fourth Amendment. *State v. Floyd*, 2017 WI 78, ¶19, 377 Wis. 2d 394, 898 N.W.2d 560.

*Id.*, ¶13.    A law enforcement officer may also conduct a seizure without reasonable suspicion under "'a few well-delineated exceptions.'"    ***State v. Pinkard***, 2010 WI 81, ¶¶13, 327 Wis. 2d 346, 785 N.W.2d 592 (quoted source omitted).    Tangentially pertinent here, one such exception involves an officer functioning as a "community caretaker."  *Id.*, ¶14.[5]

¶18    A law enforcement officer may extend the stop if the officer "'becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses'" separate from the justification for the officer's initial investigation.  ***State v. Colstad***, 2003 WI App 25, ¶19, 260 Wis. 2d 406, 659 N.W.2d 394 (quoting ***State v. Betow***, 226 Wis. 2d 90, 94, 593 N.W.2d 499 (Ct. App. 1999)).    If an officer measurably extends the stop beyond the time reasonably required to complete its mission, it then becomes an unconstitutional seizure. ***Rodriguez v. United States***, 575 U.S. 348, 357 (2015).

¶19    Reasonable suspicion is "a common sense test" that asks "the crucial question" of whether a reasonable police officer, based on articulable facts and reasonable inferences from those facts, and in light of the officer's training and experience, would suspect "that the individual has committed, was committing, or

---

[5] I do not address Hartwig's suggestion that the community caretaker exception as articulated in Wisconsin law no longer applies to vehicle searches and seizures, for two reasons. First, Hartwig does not develop an argument to support this suggestion. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed."). Second, my conclusion that the circuit court properly granted Hartwig's suppression motion because the officer unlawfully extended the stop when the officer no longer had reasonable suspicion that Hartwig had committed, was committing, or was about to commit, a crime, is dispositive. *See* ***Barrows v. American Family Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

is about to commit a crime." ***Post***, 301 Wis. 2d 1, ¶13; ***State v. Waldner***, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). "The reasonableness of a stop is determined based on the totality of the facts and circumstances." ***Post***, 301 Wis. 2d 1, ¶13.

¶20 The State concedes that both the woman and Hartwig were detained for an investigatory stop when the officer parked the squad car behind their vehicles and turned on the emergency lights. The State also asserts that the officer properly engaged in a bona fide community caretaker function when at that point the officer detained the woman and Hartwig based on a reasonable concern for the woman's safety. Hartwig argues that the record provides no support for the application of the community caretaker exception to the officer's investigation of Hartwig. The State further argues that it was reasonable suspicion that a crime had been committed, not the community caretaker exception, that warranted the officer's extending the stop "to make contact with" Hartwig. Hartwig disagrees.

¶21 I assume, without deciding, that the officer properly engaged in a bona fide community caretaker function when the officer initially detained both the woman and Hartwig. I also assume, without deciding, that the officer had, in addition, reasonable suspicion to extend the initial stop to investigate Hartwig after the officer smelled the odor of marijuana through the open window of the woman's car and the woman both denied ever using marijuana and gave a potentially dubious explanation as to why she parked in the lot. However, as the circuit court explained, the officer lacked reasonable suspicion to further detain Hartwig when: Hartwig provided the information the officer requested including an explanation of why the woman parked in the lot that mirrored the explanation given by the woman which Hartwig had not overheard; the running of Hartwig's license and information revealed no concerns; and the officer did not smell the odor of marijuana from Hartwig or his Jeep. That is, at that point the officer

lacked reasonable suspicion that Hartwig had committed or was about to commit a crime and was obligated to let him go.

¶22 The State argues that the officer lawfully extended the stop of Hartwig, "for the purpose of having a canine respond to perform an exterior sniff of the [Jeep]," because of the link between the odor of marijuana in the woman's car and the woman's having just left the Jeep. However, while that link may have sufficed to warrant the officer's initial investigation of Hartwig in his Jeep, any suspicion attendant to that link evaporated when: Hartwig provided the information the officer requested including an explanation of why the woman parked in the lot that mirrored the explanation given by the woman, which Hartwig had not overheard; the running of Hartwig's license and information revealed no concerns; and the officer did not smell the odor of marijuana from Hartwig or his Jeep.

¶23 The State also argues that the absence of any odor of marijuana from Hartwig or the Jeep did not remove the officer's suspicion because Hartwig was smoking a cigarette and the officer testified that cigarette smoke may have masked the odor of marijuana. However, the officer's suspicion did not reasonably remain when Hartwig was smoking a cigarette absent additional articulable facts that would have reasonably permitted the inference that Hartwig had used or possessed, or was using or possessing, marijuana. Given the totality of articulable facts identified above, such an inference was unreasonable.

¶24 The State also argues that the 20 minutes it took for the canine officer to arrive was not unreasonable. However, there is no evidence that the officer needed the 20 minutes to run Hartwig's license and information and learn that there were no new concerns that might warrant continuing with the stop.

10

Moreover, the isolation of the time that elapsed disregards the totality of circumstances identified above, which establish that the officer unlawfully extended the stop to request the dog-sniff when the officer no longer had reasonable suspicion that Hartwig had committed, was committing, or was about to commit, a crime.

¶25    In sum, the State fails to show that the circuit court erred in granting Hartwig's suppression motion.

## CONCLUSION

¶26    For the reasons stated above, I affirm.

*By the Court.*—Order affirmed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.